Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| BOSCO IX OVERSEAS, LLC BY FRANKLIN CREDIT MANAGEMENT CORPORATION AS SERVICER<br><br>Apelantes<br><br>v.<br><br>SUCESIÓN DE ANA VILMA FIGUEROA ROMÁN T/C/C ANA V. FIGUEROA ROMÁN COMPUESTA POR MOISÉS SIERRA FIGUEROA; NOEMÍ SIERRA FIGUEROA T/C/C MARA NOEMÍ SIERRA FIGUEROA; JOHN DOE Y RICHARD DOE COMO POSIBLES HEREDEROS DESCONOCIDOS<br><br>Apelados | TA2026AP00258 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm. D2CD2016-0348<br><br>Sobre:<br><br>Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece ante nos la parte apelante, Bosco IX Overseas, LLC by Franklin Credit Management Corporation as Servicer (en adelante, parte apelante o Bosco IX), y nos solicita la revisión de la *Sentencia* emitida el 15 de julio de 2025, notificada el 31 de julio de 2025, por el Tribunal de Primera Instancia, Sala de Guaynabo. Mediante esta, el Foro Primario determinó que se perfeccionó un contrato de transacción entre las partes, y, a tenor con ello, dictó *Sentencia* final por transacción.

Por los fundamentos que expondremos a continuación, *se revoca* la *Sentencia* apelada.

**I**

El 28 de noviembre de 2016 Scotiabank de Puerto Rico (en adelante, Scotiabank) presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca, en contra de Ana Vilma Figueroa Román (en adelante, Figueroa Román).[1] En la misma, alegó que, a partir del 1 de mayo de 2016, la señora Figueroa Román adeudaba trescientos cincuenta y seis mil seiscientos setenta y seis dólares con ochenta centavos ($356,676.80), suma que devengaba intereses al cinco por ciento (5%) anual hasta su satisfacción total. Además, sostuvo que la señora Figueroa Román también era responsable de cubrir el diez por ciento (10%) del principal consignado en el pagaré por concepto de costas, gastos y honorarios de abogado en caso de reclamación judicial. Igualmente, adujo que realizó gestiones de cobro previas que resultaron infructuosas. En consecuencia, solicitó que se ordenara la ejecución de la hipoteca en controversia, así como el pago de costas gastos y honorarios relacionados al presente litigio.

Tras varios incidentes procesales impertinentes pormenorizar, el 1 de octubre de 2018, Scotiabank presentó una *Moción Solicitando Sustitución de Parte.*[2] Mediante esta, informó que el pagaré garantizado con el préstamo hipotecario en controversia se transfirió a Bosco IX, por lo que solicitó que continuaran los procedimientos a nombre de la parte apelante. En consecuencia, el 9 de noviembre de 2018, el Foro *a quo* autorizó la sustitución.[3]

Posteriormente, el 16 de diciembre de 2022, compareció la representación legal de la señora Figueroa Román mediante una *Moción para Informar Fallecimiento de la Demandada.*[4] En la misma, señaló que, conforme a la declaratoria de herederos correspondiente, la comunidad hereditaria estaba compuesta por la parte apelada: Mara Noemí Sierra Figueroa (en adelante, Sierra

---

[1] Apéndice del recurso, Entrada Núm. 1.
[2] *Íd.*, Entrada Núm. 5.
[3] *Íd.*, Entrada Núm. 7.
[4] *Íd.*, Entrada Núm. 10.

Figueroa) y Moisés Sierra Figueroa (en adelante y en conjunto, parte apelada o Sucesión Figueroa Román). Por ello, el 10 de febrero de 2023, Bosco IX solicitó enmendar el pliego de epígrafe a los únicos efectos de sustituir a la causante por la parte apelada.[5] El 7 de diciembre de 2023, el Foro Primario concedió la petición.[6]

Ahora bien, luego de varios incidentes procesales innecesarios pormenorizar, el 25 de junio de 2024, la parte apelada presentó una *Moción Solicitando se Reconozca Transacción y se dicte Sentencia*.[7] En la misma, expuso que hizo múltiples ofertas de transacción a la parte apelante que fueron rechazadas. En específico, aludió a que el 18 de abril de 2022 ofreció ciento veinte mil dólares ($120,000.00); el 13 de junio de 2022, ciento setenta mil dólares ($170,000.00); y el 12 de diciembre de 2022, doscientos setenta mil dólares ($270,000.00). Indicó, además, que, el 10 de enero de 2023, Bosco IX le presentó una contraoferta de trescientos diez mil dólares ($310,000.00), la cual tenía una duración de treinta (30) días.[8] Arguyó que, a pesar de que el 23 de junio de 2023 la Sucesión Figueroa Román ofreció pagar la suma reclamada, la parte apelante rechazó la aludida cantidad y la aumentó a cuatrocientos cincuenta mil dólares ($450,000.00), sin proveer explicación alguna. De este modo, la parte apelada adujo que, a su juicio, los hechos descritos demostraban que se había perfeccionado un contrato de transacción entre las partes, y, como consecuencia, Bosco IX venía obligado a honrarlo. Así, la parte apelada le solicitó al Foro de Instancia que reconociera la existencia del referido acuerdo, y dictara *Sentencia* de conformidad.

El 15 de julio de 2024 la parte apelante presentó su *Oposición a Moción Solicitando se Reconozca Transacción y se dicte Sentencia*.[9]

---

[5] *Íd.*, Entrada Núm. 11.
[6] *Íd.*, Entrada Núm. 13.
[7] *Íd.*, Entrada Núm. 16.
[8] *Íd.,* Entrada Núm. 16, Anejo 2.
[9] *Íd.*, Entrada Núm. 16.

En lo pertinente, Bosco IX planteó que la contraoferta hecha el 10 de enero de 2023 tenía una vigencia de treinta (30) días, por lo que la misma había expirado el 9 de febrero de 2023. Sostuvo que, dentro de ese término provisto, la Sucesión Figueroa Román no realizó ningún acto afirmativo que pudiera interpretarse como aceptación de la oferta ni como acto dirigido a perfeccionar un contrato de transacción entre las partes. Añadió que tampoco le comunicó necesidad alguna de tiempo adicional para evaluarla. Señaló, además, que en la comunicación mediante la cual se notificó la contraoferta se advirtió que, una vez vencido el plazo de treinta (30) días, sería necesario inspeccionar la propiedad para considerar una nueva oferta, lo que incluso podía conllevar un aumento en la cantidad propuesta. Por último, adujo que la parte apelada intentó satisfacer la referida cantidad ciento treinta y cuatro (134) días después de expirado el término, por lo que no había una oferta vigente que pudiera ser aceptada.

Así las cosas, el 24 de septiembre de 2024, se celebró una vista evidenciaria para dilucidar la controversia. En la misma, declaró la señora Sierra Figueroa y la señora Noraida Torres Pérez, quien laboraba como *Loss Mitigation Negotiator* de Bosco IX.

Evaluados los testimonios, así como la prueba documental presentada, el 15 de julio de 2025 el Tribunal de Primera Instancia emitió la *Sentencia* apelada.[10] En su dictamen, concluyó que de la prueba desfilada no surgió justificación alguna para avalar el aumento en la cantidad adeudada. Asimismo, determinó que Bosco IX no articuló razones que justificaran el rechazo de las ofertas formuladas por la parte apelada ni que respaldaran la elevación de la cantidad adeudada. Igualmente, razonó que las actuaciones de las partes configuraron un contrato de transacción válido, lo que

---

[10] *Íd.*, Entrada Núm. 18.

imponía a Bosco IX la obligación de cumplir con sus términos. En consecuencia, el Foro de Instancia reconoció la transacción por la suma de trescientos diez mil dólares ($310,000.00) y emitió su dictamen conforme a ello, sin imponer costas ni honorarios de abogado.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 11 de marzo de 2026, la parte apelante presentó el recurso de *Apelación* ante nos. En el mismo, señaló la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al emitir *Sentencia* determinando que entre las partes se perfeccionó un contrato de transacción cuando las determinaciones de hechos de la *Sentencia* no se sustentan en la prueba desfilada durante la vista evidenciaria.

Por su parte, el 6 de mayo de 2026, la parte apelada presentó su oposición al recurso de epígrafe.

Tras examinar el expediente de autos, y con el beneficio de la comparecencia de ambas partes, así como de la transcripción de la prueba oral, procedemos a expresarnos.

## II

## A

Según dispone el Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751, el contrato es el negocio jurídico bilateral en virtud del cual dos o más partes expresan su consentimiento en la forma prevista por ley para crear, regular, modificar o extinguir sus obligaciones. Así, el estado de derecho reconoce que existe un contrato desde que dos o más personas consienten a obligarse entre sí a dar alguna cosa o a prestar algún servicio. Lo anterior resulta del principio de la autonomía de la voluntad, cuya esencia radica en otorgar un amplio margen de libertad de acción a los particulares que desean obligarse, siempre que sus acuerdos sean cónsonos con la ley, la moral y el orden público. 31 LPRA sec. 9753. Las

obligaciones derivadas de los contratos tienen fuerza de ley entre las partes. 31 LPRA sec. 9754. La existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de consentimiento, objeto cierto y causa de la obligación que se establezca. 31 LPRA secs. 9754 y 9771. Así, una vez perfeccionado, el mismo es obligatorio cualquiera que sea la forma en la que se haya celebrado, siempre que en él se hagan presentes las condiciones esenciales para su validez. 31 LPRA secs. 9752 y 9753. De este modo, cuando un contrato es perfectamente legal, los tribunales de justicia están impedidos de relevar a una parte de acogerse a sus términos. *Merchant Advance, LLC v. Conceptos Cuisine, LLC*, 2026 TSPR 15, 217 DPR __ (2026); *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999).

En lo concerniente, por el contrato de *transacción*, las partes, mediante concesiones recíprocas, ponen fin a un litigio o a la incertidumbre de su relación jurídica. 31 LPRA sec. 10641. Así, dando o prometiendo, estas evitan la provocación de un pleito, o ponen fin al que había comenzado. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 205 (2020). La doctrina interpretativa aplicable establece los elementos constitutivos de un acuerdo transaccional, a saber: 1) existencia de una relación jurídica incierta litigiosa; 2) intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable y; 3) recíprocas concesiones de las partes. *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 156 (2021). Por igual, el estado de derecho reconoce que este tipo de contrato produce los efectos de cosa juzgada y que su interpretación es una de carácter restrictivo. 31 LPRA secs. 10643 y 10644. A su vez, y en materia de forma, el contrato de transacción debe constar en un escrito firmado por las partes o, en su caso, en una sentencia dictada por un tribunal. 31 LPRA sec. 10647. El contrato de transacción da lugar a nuevos vínculos

obligacionales que sustituyen aquellos que se modifican o se extinguen.

La doctrina interpretativa clasifica el contrato de transacción en dos grupos, a saber: el *extrajudicial* o el *judicial. Berkan et al. v. Mead Johnson Nutrition,* supra*,* pág. 207. En el primero de los escenarios, como norma, las partes acuerdan resolver su disputa previo a hacer uso de los tribunales. De otro lado, el contrato se denomina *judicial,* cuando luego de iniciado un pleito, las partes convienen en eliminar la controversia entre ellos habida, incorporando su acuerdo a las formalidades del proceso, para que sea debidamente aprobado y se dé por terminado el asunto.

**III**

En su recurso, Bosco IX sostiene que el Tribunal de Primera Instancia incidió al concluir que entre las partes se perfeccionó un contrato de transacción, cuando, a su juicio, de la propia prueba documental surgía que la oferta de trescientos diez mil dólares ($310,000.00) estaba sujeta a ser aceptada en un periodo de treinta (30) días y que la parte apelada no la aceptó dentro del referido término. Habiendo examinado el referido señalamiento a la luz de los hechos acontecidos y de la norma aplicable, resolvemos revocar el dictamen apelado.

Conforme esbozáramos previamente, las obligaciones derivadas de los contratos tienen fuerza de ley entre las partes, y la existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de consentimiento, objeto cierto y causa de la obligación que se establezca. En lo concerniente al contrato de transacción, el estado de derecho reconoce que, mediante concesiones recíprocas, las partes procuran poner fin a un litigio o a la incertidumbre de su relación jurídica. Del mismo modo, la doctrina interpretativa aplicable establece como elementos constitutivos de un acuerdo transaccional: 1) la existencia de una

relación jurídica incierta o litigiosa; 2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable; y 3) concesiones recíprocas entre las partes. Asimismo, nuestro ordenamiento jurídico reconoce que el contrato de transacción debe interpretarse de forma restrictiva.

En el caso ante nuestra consideración, surge del expediente ante nos que la alegada transacción descansaba sobre una contraoferta cursada por Bosco IX el 10 de enero de 2023, mediante la cual accedía a resolver el litigio por la suma de trescientos diez mil dólares ($310,000.00).[11] Ahora bien, de la propia comunicación remitida por la parte apelante surge inequívocamente que la referida oferta tenía una vigencia limitada de treinta (30) días y que, una vez transcurrido dicho término sin aceptación alguna, sería necesario realizar una nueva inspección de la propiedad para evaluar cualquier otra oferta, lo que incluso podía conllevar un aumento en la cantidad exigida. Del mismo modo, se le requirió que, de tener interés en aceptar la misma, la parte apelada debía presentar evidencia de los fondos disponibles, así como de su procedencia.

Lo anterior quedó igualmente corroborado por la propia prueba oral desfilada durante la vista evidenciaria. En específico, surge de la transcripción de la prueba oral se desprende que la señora Sierra Figueroa testificó que Bosco IX le presentó una contraoferta por la suma de trescientos diez mil dólares ($310,000.00), cuya vigencia sería de treinta (30) días.[12] Asimismo, admitió que también se le informó que, culminado el referido término, sería necesario inspeccionar nuevamente la propiedad para evaluar cualquier otra oferta y que la suma propuesta podía aumentar.[13] De igual forma, durante su contrainterrogatorio, aceptó

---

[11] *Véase*, Apéndice del recurso, Entrada Núm. 16, Anejo 2.
[12] *Véase*, Transcripción de la Prueba Oral, pág. 32.
[13] *Íd.*, pág. 34.

que el término de treinta (30) días transcurrió sin que se concretara acuerdo alguno entre las partes.[14] Por igual, emana de su testimonio que esta declaró que no le remitió comunicación alguna a Bosco IX solicitando un término adicional para completar las gestiones pertinentes para obtener la cantidad solicitada.[15]

A tenor con lo anterior, no existe controversia respecto a que el término concedido expiró el 9 de febrero de 2023 y que, dentro de ese periodo, la parte apelada no realizó acto afirmativo alguno dirigido a aceptar la oferta o perfeccionar un acuerdo transaccional. Por el contrario, fue el 23 de junio de 2023, esto es, aproximadamente ciento treinta y cuatro (134) días luego de vencido el término dispuesto por Bosco IX, que la parte apelada intentó satisfacer la suma propuesta. No obstante, para entonces, la oferta no estaba vigente.

Por tanto, es nuestra apreciación que el Tribunal de Primera Instancia erró al concluir que las actuaciones de las partes configuraron un contrato de transacción válido. Enfatizamos en que para la existencia de un acuerdo transaccional debe concurrir, entre otros elementos, la intención de las partes de dar fin a la controversia y sustituir la relación dudosa por otra cierta e incontestable, así como concesiones recíprocas entre estas. Sin embargo, la prueba documental y oral desfilada demostró que Bosco IX condicionó expresamente su contraoferta de trescientos diez mil dólares ($310,000.00) a un término específico de treinta (30) días y que, vencido dicho término sin aceptación alguna, las negociaciones entre las partes continuarían sujetas a evaluación y a posibles modificaciones. No surge del caso ante nuestra consideración que la parte apelada haya cumplido con las condiciones impuestas por Bosco IX.

---

[14] *Íd.*, pág. 57.
[15] *Íd.*, págs. 57-58.

Así, el mero interés de la parte apelada en aceptar tardíamente la suma propuesta no bastaba para concluir que se perfeccionó un contrato de transacción entre las partes, particularmente cuando la propia oferta establecía expresamente un término de vigencia que transcurrió sin aceptación oportuna. En consecuencia, procede revocar la *Sentencia* apelada, por lo que devolvemos el presente caso al Foro de Instancia para que continúen los procedimientos conforme a nuestro dictamen.

**IV**

Por los fundamentos antes esbozados, *revocamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones